U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2026 SEP 14 P 4: 24

CLERK
BY ______
DEPUTY CLERK

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

| | | |
|---|---|---|
| GEORGE W., Plaintiff, | ) | |
| v. | ) | Case No. 2:25-cv-00886-cr |
| FRANK J. BISIGNANO, COMMISSIONER OF SOCIAL SECURITY, Defendant. | ) | |

**OPINION AND ORDER**
**DENYING PLAINTIFF'S MOTION FOR AN ORDER REVERSING THE DECISION OF THE COMMISSIONER AND GRANTING THE COMMISSIONER'S MOTION TO AFFIRM**
(Docs. 11, 15)

George W. ("Plaintiff") is a claimant for Social Security Disability Insurance Benefits ("DIB") under the Social Security Act ("SSA") and brings this action pursuant to 42 U.S.C. § 405(g). On March 23, 2026, Plaintiff moved to reverse the decision of the Commissioner of Social Security (the "Commissioner") which found that he was not disabled for the relevant period.[1] (Doc. 11.) On May 23, 2026, the Commissioner cross-moved to affirm his decision. (Doc. 15.)

Plaintiff is represented by Craig A. Jarvis, Esq. The Commissioner is represented by Special Assistant United States Attorneys Candance Brown Casey and Vernon Norwood.

[1] Disability is the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] months[.]" 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant's "physical or mental impairment or impairments" must be "of such severity" that the claimant is not only unable to do any previous work but cannot, considering the claimant's age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

## I. Procedural History.

Plaintiff filed his application for DIB on November 22, 2022, alleging a disability beginning September 1, 2022, based on depression, anxiety, degenerative disc disease L4-5, central disc herniations L4-5, lumbar spondylosis, chronic Hill-Sachs deformity right humerus, dyslexia, post-traumatic stress disorder ("PTSD"), and autism.[2] His claim was initially denied on June 30, 2023, and upon reconsideration on October 10, 2023. On December 5, 2023, Plaintiff filed a request for a hearing, which was held via video before Administrative Law Judge ("ALJ") Paul Martin on September 24, 2024.

On October 25, 2024, ALJ Martin issued an unfavorable decision based on his conclusion that Plaintiff was not disabled within the meaning of the SSA. Plaintiff thereafter timely filed an administrative appeal on November 19, 2024, and the Appeals Council denied review on August 21, 2025. As a result, ALJ Martin's disability determination stands as the Commissioner's final decision, and Plaintiff has appealed that order to this court.

## II. ALJ Martin's October 25, 2024 Decision.

Plaintiff was forty-four years old on his alleged disability onset date and forty-seven years old at the time of ALJ Martin's decision. ALJ Martin found that Plaintiff has at least a high school education and no past relevant work. He had previously worked for an art fabrication company managing the production of molds.

In order to receive DIB under the SSA, a claimant must be disabled on or before the claimant's date last insured. A five-step, sequential-evaluation framework determines whether a claimant is disabled:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a "residual functional capacity" assessment, whether the claimant can

[2] Plaintiff had previously filed for DIB on July 29, 2021, alleging a disability beginning September 30, 2019. The SSA denied Plaintiff's claim, and the ALJ affirmed the unfavorable decision. Plaintiff did not appeal this decision. He concedes that "the disability determination for the period prior to September 1, 2022[] is final." (Doc. 11-1 at 1 n.1.)

> perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*Colgan v. Kijakazi*, 22 F.4th 353, 357-58 (2d Cir. 2022) (quoting *Estrella v. Berryhill*, 925 F.3d 90, 94 (2d Cir. 2019)).

At Steps One through Four of this analysis, "the claimant bears the burden of proof; but at [S]tep [F]ive, the burden shifts to the Commissioner." *Id.* (citing *Estrella*, 925 F.3d at 94); *see also Sczepanski v. Saul*, 946 F.3d 152, 158 (2d Cir. 2020) ("The claimant has the general burden of proving that he or she has a disability within the meaning of the [SSA][] and bears the burden of proving his or her case at [S]teps [O]ne through [F]our. At Step Five, the burden shifts to the Commissioner to show there is other work that the claimant can perform.") (quoting *McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014)).

At Step One, ALJ Martin found that Plaintiff had met the SSA's insured status requirements through December 31, 2024, and had not engaged in substantial gainful activity since his alleged DIB onset date of September 1, 2022.

At Step Two, he concluded that Plaintiff had the following severe impairments: degenerative disc disease of the lumbar spine, right shoulder disorder, depressive disorder, and anxiety disorder.[3]

At Step Three, ALJ Martin found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the Listings. With respect to Plaintiff's physical impairments, he opined that their severity "does not meet the criteria of any listed impairments described in Appendix 1 of the

---

[3] ALJ Martin found that Plaintiff's PTSD was not "a medically determinable impairment" in part because the only medical professional who diagnosed Plaintiff with this condition was his licensed mental health counselor, Cherise Boutin, "who is not an acceptable medical source within the meaning of the regulations." Doc. 7-1 at 26 (footnote omitted); *see also* 20 C.F.R. § 404.1502(a)(1)-(7) (defining acceptable medical sources as licensed physicians, licensed psychologists, licensed optometrists, licensed podiatrists, qualified speech-language pathologists, licensed audiologists, licensed advance practice registered nurses, and licensed physician assistants).

Regulations." (Doc. 7-1 at 26.) In reaching this conclusion, ALJ Martin noted that he had "specifically considered the criteria of section 1.15 regarding disorders of the skeletal spine and section 1.18 regarding abnormality of a major joint in any extremity[]" and "considered the opinions of the state agency medical consultants who evaluated this issue at the initial and reconsideration levels of the administrative review process and reached the same conclusion." *Id.* With regard to Plaintiff's mental impairments, ALJ Martin found that, whether "considered singly and in combination," their severity "does not meet or medically equal the criteria of listings 12.04 regarding depressive, bipolar, and related disorders and 12.06 regarding anxiety and obsessive-compulsive disorders." *Id.*

At Step Four, ALJ Martin determined that Plaintiff had the residual functional capacity ("RFC") to:

> [P]erform light work as defined in 20 CFR [§] 404.1567(b) except that he could occasionally crawl and frequently stoop.[4] [Plaintiff] should avoid prolonged exposure to extreme cold and vibration. [Plaintiff] could maintain concentration, persistence, and pace for simple and detailed, but not complex[,] tasks. [Plaintiff] could sustain activities without fast-paced production requirements over two-hour blocks.

*Id.* at 28 (emphasis omitted).

In so deciding, ALJ Martin considered Plaintiff's testimony at the September 24, 2024 hearing:

> [Plaintiff] indicated that he experiences symptoms such as low back pain, right shoulder pain, and limited mobility. He noted that his physical impairments prevent him from lifting more than a small amount of weight or engaging in any prolonged periods of exertion. [Plaintiff] testified that he

---

[4] 20 CFR § 404.1567(b) defines light work as follows:

> Light work involves lifting no more than [twenty] pounds at a time with frequent lifting or carrying of objects weighing up to [ten] pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 CFR § 404.1567(b).

> has spasms in his back that come and go, and he noted that they occur every four to six weeks. During these spasms, his pain is reportedly debilitating for four days to a week or more. He likened his back pain to the sensation of having a broken arm. He reported that he has used medications such as [c]yclobenzaprine and [t]ramadol, and he has also participated in acupuncture and physical therapy modalities. [Plaintiff] estimated that he can sit for about twenty minutes at one time and stand for about fifteen to twenty minutes at one time. He indicated that he has been using a walking stick for a couple of years, but he has now also begun to use a cane for ambulation. From a mental standpoint, [Plaintiff] indicated that he experiences symptoms such as anger, anxiety, and low mood. He indicated that his mental impairments are partially related to his physical limitations. He noted that some of his mental impairments stem from a history of trauma, and he noted a diagnosis of [PTSD].

*Id.* at 32.

ALJ Martin concluded, to the extent Plaintiff testified to limitations greater than those which ALJ Martin found, "that testimony is . . . inconsistent with the medical evidence and other evidence in the record" for three reasons. *Id.* at 34. First, ALJ Martin determined that Plaintiff's allegations regarding his physical and mental impairments were inconsistent with "the objective medical evidence of record[.]" (Doc. 7-1 at 34.)[5] Regarding his mental impairments, ALJ Martin explained that there was "no evidence of psychiatric hospitalization, episodes of decompensation, or active suicidal ideation during the time period in question[,]" that Plaintiff "has generally exhibited only a mild-to-moderate degree of overall mental impairment, as illustrated by his mental status examination findings throughout the record, which have been largely within normal limits[,]"[6] and that Plaintiff has "endorsed benefit from his use of medications and his counseling sessions[.]" *Id.* at 34-35.

With respect to Plaintiff's back pain, ALJ Martin reasoned that Plaintiff received

---

[5] In February 2021, Plaintiff began physical therapy for back pain. In July and August of 2021, he complained that although he had previously been able to snowshoe five to six miles without difficulty, he was finding it difficult to walk a mile per day. Dr. Todd Lefko, M.D., a physiatrist, evaluated Plaintiff several times and recommended physical therapy.

[6] A November 17, 2021, psychological consultative exam diagnosed Plaintiff with adjustment disorder with depressed and anxious mood. (Doc. 7-1 at 657.)

"entirely conservative" treatment which "has been at least somewhat effective." *Id.* at 35. ALJ Martin further noted that Plaintiff's "examination findings have often included an intact gait, 5/5 motor strength throughout, and intact sensation[,]" Plaintiff's MRI results "have not shown evidence of nerve root compression or significant central, foraminal, or lateral recess stenosis," and Plaintiff's EMG study "was found to be largely within normal limits." *Id.* With respect to Plaintiff's shoulder issues, ALJ Martin opined that Plaintiff "has not made persistent complaints of ongoing right shoulder pain during the time period in question[]" and "his examination findings have not generally reflected evidence of loss of strength in the right arm, limited range of motion, or sensation deficits." *Id.*

Second, ALJ Martin determined that Plaintiff's allegations were inconsistent with the medical evidence because "the record does not indicate that [Plaintiff] has made any persistent complaint of side effect[s] from medication or that medical providers have seen a need to make any significant change in the type of medication." *Id.* He reasoned that Plaintiff reported benefits from "his use of medical marijuana in early 2023" and that, "[a]side from switching from [f]luoxetine to [d]uloxetine during the early months of 2023, [Plaintiff]'s medications appear to have remained largely stable during the period in question." (Doc. 7-1 at 35.)

Finally, ALJ Martin found that Plaintiff "has reported a range of daily activities that are not generally consistent with his allegations of disabling physical and mental impairments." *Id.* ALJ Martin pointed out that Plaintiff was "able to care for his dog, attend to personal care tasks, prepare simple meals, sweep the floor, do light cleaning, drive a vehicle, shop for groceries, handle personal finances, go for short walks, watch on his iPad, read, visit with his parents, and attend his medical appointments[,]" which are activities "not generally consistent with" Plaintiff's allegations. *Id.* Although ALJ Martin acknowledged that Plaintiff "has at times described a more limited range of daily activity," he found these allegations were not "strong evidence in favor of finding" Plaintiff disabled because "allegedly limited daily activities cannot be objectively verified with any reasonable degree of certainty[]" and, "even if [Plaintiff]'s daily activities are

truly as limited as alleged, it is difficult to attribute that degree of limitation to [Plaintiff]'s medical condition, as opposed to other reasons, in view of the medical evidence and other factors discussed in this decision." *Id.*

In assessing Plaintiff's RFC, ALJ Martin found the Disability Determination Explanations (the "DDE") of consulting physicians to the Disability Determination Service (the "DDS"), Geoff Knisely, M.D., and Leslie Abramson, M.D., regarding Plaintiff's physical impairments "to be persuasive because they are consistent with the evidence of record." *Id.* at 33. In their assessments, Dr. Knisely and Dr. Abramson both opined that Plaintiff could lift up to twenty pounds occasionally and ten pounds frequently; sit, stand, and walk for six hours in an eight-hour workday; stoop frequently; and crawl occasionally and that Plaintiff should avoid concentrated exposure to extreme cold and vibration. ALJ Martin explained that Dr. Knisely's and Dr. Abramson's opinions were "consistent with [Plaintiff]'s conservative and partially effective treatment history for his physical impairments[]"; "consistent with [Plaintiff]'s physical examination findings throughout the period in question, which have generally included intact sensation, symmetric reflexes, normal motor strength, and painful range of motion in the lumbar spine[]"; "consistent with [Plaintiff]'s findings upon MRI and EMG studies[,]" which "showed no evidence of compression of nerve roots, as well as no central, foraminal, or lateral recess stenosis of any significance[]"; and "consistent with [Plaintiff]'s reasonable range of reported daily activities, which has included light cooking and cleaning, driving, shopping, and going for short daily walks." *Id.* ALJ Martin also noted that "Drs. Knisely and Abramson supported their opinions with a detailed explanation of the relevant clinical evidence and [Plaintiff]'s self-reported activities of daily living." (Doc. 7-1 at 33.)

In contrast, ALJ Martin found the opinions of Plaintiff's primary care physician, Jackie Roy, APRN,[7] regarding Plaintiff's physical impairments to be unpersuasive. In Nurse Roy's assessment, she indicated that Plaintiff had "[m]arked" pain, that Plaintiff

[7] Nurse Roy began treating Plaintiff on July 20, 2021.

could occasionally lift up to twenty pounds and occasionally carry up to ten pounds, and that Plaintiff could sit for one to two hours at one time, stand for half an hour at one time, and walk for thirty to sixty minutes at one time. *Id.* at 992. Nurse Roy further found that Plaintiff would have to lie down for at least twenty minutes several times throughout the course of an average workday, that Plaintiff's impairments would cause him to be off-task for twenty percent or more of an average workday, and that Plaintiff would have two or more unexcused absences from work per month. ALJ Martin opined that Nurse Roy's "suggested degree of physical limitation" was "inconsistent with [Plaintiff]'s conservative and partially effective history of treatment for his physical impairments[,]" "inconsistent with [Plaintiff]'s physical examination findings throughout the period in question[,]" and "inconsistent with [Plaintiff]'s reasonable range of reported daily activities[.]" *Id.* at 33.

With regard to Plaintiff's mental impairments, ALJ Martin found the assessment of Edward Schwartzreich, M.D., a consulting psychiatrist to the DDS, to be unpersuasive because Dr. Schwartzreich concluded that Plaintiff had no severe mental impairments. ALJ Martin determined that the assessment of Thomas Reilly, Ph.D., a consulting psychologist to the DDS, was persuasive. Dr. Reilly assessed that Plaintiff had "no limitation in the ability to understand, remember, or apply information, no limitation in interacting with others, a moderate limitation in the ability to maintain concentration, persistence, and a mild limitation in the ability to adapt or manage oneself." *Id.* at 30. Dr. Reilly opined that Plaintiff "could concentrate for [one-to-three-]step tasks with episodic disruption to sustained concentration and a slower pace of activities[]" and "was capable of working for two-hour increments over an eight-hour day and a forty-hour workweek." *Id.* ALJ Martin reasoned that "the mild-to-moderate degree of mental limitation set forth in Dr. Reilly's opinion" was consistent with Plaintiff's "limited, conservative, and partially effective mental health treatment history[,]" consistent with Plaintiff's "largely benign findings upon baseline mental status examination throughout the period in question," and consistent with Plaintiff's range of reported daily activities. *Id.* at 34.

As for the opinions of Plaintiff's mental health counselor, Cherise Boutin,

LMHC,[8] ALJ Martin found them to be unpersuasive because Ms. Boutin opined that Plaintiff was seriously limited in various work-related function categories and Plaintiff's mental impairments would cause him to be off-task for twenty percent or more of an average workday and cause him to be absent from work two or more days per month. In finding her opinions unpersuasive, ALJ Martin reasoned that Ms. Boutin's "assessment of extreme mental limitations" was inconsistent with Plaintiff's treatment history, mental status examinations, and reported daily activities. (Doc. 7-1 at 34.) The ALJ thus imposed no off-task or absenteeism-related limitations as part of his RFC.

At Step Five, ALJ Martin determined that, based on the testimony of a vocational expert, Plaintiff could perform the following jobs which exist in significant numbers in the national economy through the date last insured: security guard (approximately 290,000 jobs available in the national economy), gate guard (approximately 138,000 jobs available in the national economy), and chauffeur (approximately 27,000 jobs available in the national economy). Accordingly, ALJ Martin concluded that Plaintiff was not disabled.

## III. Conclusions of Law and Analysis.

### A. Standard of Review.

In reviewing the Commissioner's decision, the court "conduct[s] a plenary review of the administrative record to determine if there is substantial evidence, considering the record as a whole, to support the Commissioner's decision and if the correct legal standards have been applied." *Cichocki v. Astrue*, 729 F.3d 172, 175-76 (2d Cir. 2013) (internal quotation marks and citation omitted). "Substantial evidence . . . is 'more than a mere scintilla.' It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (internal citations omitted). "'Substantial evidence' is 'a very deferential standard of review.'" *Nunez v. Comm'r of Soc. Sec.*, 164 F.4th 60, 70 (2d Cir. 2025) (quoting *Schillo v. Kijakazi*, 31 F.4th 64, 74 (2d Cir. 2022)). "[U]nder the substantial evidence

[8] Ms. Boutin began treating Plaintiff on September 14, 2022.

standard, the [Commissioner]'s determination must be upheld if it is rational and supported by the record, even 'if the evidence is susceptible to more than one rational interpretation.'" *Id.* (alterations adopted) (quoting *Schillo*, 31 F.4th at 74).

It is the Commissioner who resolves evidentiary conflicts, and the court "will not substitute [its] judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002); *see also Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008) (noting that "genuine conflicts in the medical evidence are for the Commissioner to resolve") (alteration adopted) (internal quotation marks and citation omitted). "[O]nce an ALJ finds facts, [a court] can reject those facts only if a reasonable factfinder would have to conclude otherwise." *Schillo*, 31 F.4th at 74 (emphasis, internal quotation marks, and citation omitted).

Notwithstanding the deferential standard of review, "the ALJ must still set forth the 'crucial factors' underlying [his or her] factual findings and determinations with 'sufficient specificity' so that the reviewing court can 'decide whether the determination is supported by substantial evidence.'" *Nunez*, 164 F.4th at 70 (emphasis omitted) (quoting *Schillo*, 31 F.4th at 74). The court does not defer to the Commissioner's decision "[w]here an error of law has been made that might have affected the disposition of the case[.]" *Pollard v. Halter*, 377 F.3d 183, 189 (2d Cir. 2004) (internal quotation marks omitted) (first alteration in original). "Even if the Commissioner's decision is supported by substantial evidence, legal error alone can be enough to overturn the ALJ's decision." *Michelle H. v. Bisignano*, 2025 WL 2838993, at *4 (D. Vt. Oct. 7, 2025) (internal quotation marks omitted) (quoting *Jason F. v. O'Malley*, 2024 WL 1756547, at *4 (D. Vt. Apr. 23, 2024)).

**B. Whether Substantial Evidence Supports the ALJ's RFC Determination.**

Plaintiff contends that ALJ Martin's RFC determination "is not supported by substantial evidence" because ALJ Martin failed to properly assess Plaintiff's self-reported symptoms and instead cherry-picked evidence from the record. (Doc. 11 at 5.) In addition, he claims ALJ Martin failed to consider Plaintiff's off-task and absenteeism-

related limitations.

A claimant's RFC is the "most [he or she] can still do despite [his or her] limitations." 20 C.F.R. § 404.1545(a)(1). An ALJ must assess a claimant's RFC "based on all the relevant evidence in [his or her] case record[,]" including medical opinion evidence concerning the claimant's functional limitations and the claimant's or other lay witnesses' statements concerning "limitations that result from [] symptoms, such as pain[.]" *Id.* §§ 404.1545(a)(1), (a)(3).

In determining an individual's RFC, an ALJ "'must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions in paragraphs (b), (c), and (d) of 20 CFR 404.1545 and 416.945.'" *Cichocki*, 729 F.3d at 176 (quoting *SSR 96-8P*, 1996 WL 374184, at *1 (S.S.A. July 2, 1996)). These functions "include physical abilities such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions; mental abilities such as understanding, remembering, carrying out instructions, and responding appropriately to supervision; and other abilities that may be affected by impairments, such as seeing, hearing, and the ability to tolerate environmental factors." *Id.*

"The plaintiff bears the 'burden to prove a more restrictive RFC than the RFC assessed by the ALJ.'" *Linda L. v. Colvin*, 2025 WL 262366, at *9 (D. Vt. Jan. 21, 2025) (quoting *Michael P. v. Comm'r of Soc. Sec.*, 2023 WL 21228, at *7 (W.D.N.Y. Jan. 3, 2023)); *see also Smith v. Berryhill*, 740 F. App'x 721, 726 (2d Cir. 2018) (noting that plaintiff "had a duty to prove a more restrictive RFC[] and failed to do so[]") (citations omitted).

### 1. Whether the ALJ Erred in Assessing Plaintiff's Self-Reported Symptoms and Limitations.

Plaintiff contends that ALJ Martin did not properly consider his testimony and self-reports regarding "episodic exacerbations of pain that render him unable to function." (Doc. 11 at 6.)[9] 20 C.F.R. § 404.1529 provides "a two-step process for

[9] Plaintiff does not contest ALJ Martin's findings with respect to Plaintiff's mental impairments

evaluating a claimant's assertions of pain and other limitations." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010).

"At the first step, the ALJ must decide whether the claimant suffers from a medically determinable impairment that could reasonably be expected to produce the symptoms alleged." *Id.* (citing 20 C.F.R. § 404.1529(b)). "If the claimant does suffer from such an impairment, at the second step, the ALJ must consider 'the extent to which the claimant's symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence' of record." *Id.* (alteration adopted) (quoting 20 C.F.R. § 404.1529(a)). In making the second step determination, the ALJ "must consider 'statements the claimant or others make about his [or her] impairment(s), his [or her] restrictions, his [or her] daily activities, his [or her] efforts to work, or any other relevant statements he [or she] makes to medical sources during the course of examination or treatment, or to the agency during interviews, on applications, in letters, and in testimony in its administrative proceedings.'" *Id.* (alterations adopted) (citations omitted). "[A]n ALJ's credibility determination is generally entitled to deference on appeal." *Selian v. Astrue*, 708 F.3d 409, 420 (2d Cir. 2013).

At the September 24, 2024 hearing, Plaintiff testified that, among other things, he had unpredictable episodes of disabling back pain that would confine him to his bed from one to ten days, that he had been using a walking stick for a couple of years and used a cane for ambulation, and that he could drive for approximately twenty minutes at one time, sit for approximately twenty minutes at one time, stand for approximately ten to fifteen minutes at one time, and lift up to approximately eight to ten pounds. Plaintiff further testified that he received a substantial amount of help from his parents in performing daily activities, including laundry, that he could no longer perform yard work, and that he grocery shopped once a week for three minutes for a maximum of five items.

ALJ Martin determined that Plaintiff's allegations of disabling back pain were inconsistent with the objective medical evidence. In examination findings of Plaintiff

---

and shoulder pain and concedes his "central claim . . . is that he has episodes of back pain that are disabling[.]" (Doc. 11 at 5.)

were generally unremarkable, Plaintiff's treatment was conservative in nature with Plaintiff declining more aggressive treatment options, and Plaintiff reported an ability to perform a wide range of daily activities. Other than Plaintiff's self-reports, there was no other evidence of disabling pain.

**a. Examination Findings of Plaintiff.**

On August 16, 2022, Plaintiff received an MRI of his spine, and the results revealed degenerative disc disease at L4-5 without thecal sac compression or nerve root compression. A February 29, 2024 EMG study performed on Plaintiff yielded normal results "with no evidence of peripheral neuropathy involving the lower extremities or entrapment neuropathy in the left upper extremity[,]" (Doc. 7-1 at 994), and an August 15, 2024 CT scan performed on Plaintiff's lumbar spine resulted in impressions of transitional anatomy and Bertolotti syndrome[10] but showed no acute fracture or disc herniation.

Plaintiff contends that his "[p]hysical examinations consistently documented reduced range of motion, pain at end ranges, tenderness, and guarded movement[]" and that "[p]roviders observed antalgic or altered gait, stiffness, difficulties with changing position, and decreased strength, all of which are consistent with chronic and functionally limiting back pain." (Doc. 11 at 5-6.) Physical examination findings during the period of alleged disability are as follows:

- On November 29, 2022, Dr. Magnadottir found that Plaintiff "does not appear to be in severe distress while sitting still[,]" but "[h]e does transition from sitting to standing quite slowly[,]" that Plaintiff was "nontender to palpation along the midline[,]" that Plaintiff's "psoas strength" was "+4/5 bilaterally although he may be limited by pain[,]" that Plaintiff's "quadricep, hamstring, dorsi and plantar flexion" were 5/5, and that Plaintiff's sensation was grossly intact to light touch, (Doc. 7-1 at 725);

---

[10] "Bertolotti syndrome is a congenital disorder leading to back pain associated due to a lumbosacral transitional vertebra (LSTV)." *La'Shonta R. v. O'Malley*, 2024 WL 7063498, at *2 n.3 (N.D. Tex. Aug. 23, 2024) (internal quotation marks omitted) (quoting Amanda E. Miller & Andrew Zhang, *Bertolotti Syndrome*, Nat'l Ctr. for Biotechnology Info. (July 25, 2023), https://www.ncbi.nlm.nih.gov/books/NBK585032).

- On February 20, 2023, Nurse Roy found that Plaintiff had limited lateral flexion, limited extension, and pain with motion but otherwise normal flexion, normal sensation in the legs, normal motor strength, and no tenderness;
- On April 17, 2023, Nurse Roy found that Plaintiff's gait was normal;
- On August 28, 2023, Nurse Roy found that Plaintiff had normal gait, sensation, and reflexes, that Plaintiff had normal motor strength and "normal movement of all extremities[,]" and that Plaintiff had "diffuse tenderness through lumbar musculature" and "moves cautiously when getting out of [the] chair[] onto [the] exam table[] and when going from lying supine to sitting position on [the] exam table[,]" *id.* at 941;
- On February 26, 2024; April 30, 2024; and June 7, 2024, Nurse Roy found that Plaintiff had an antalgic gait but normal motor strength with "no tremor, tics, or involuntary movements[,]" *id.* at 981, 1001, 1004;
- On August 15, 2024, an examination at the Springfield Hospital found that Plaintiff had no motor deficit, no sensory deficit, and normal reflexes; and
- On September 9, 2024, Nurse Roy found that Plaintiff had normal movement of all extremities, normal gait and reflexes, grossly intact sensation, and diffuse tenderness through the lumbar musculature.

On balance, Plaintiff's physical examinations generally resulted in findings that he had normal reflexes, gait, range of motion, motor strength, and sensation.

**b. Plaintiff's Conservative Treatment.**

Throughout the period of alleged disability, Plaintiff received conservative treatment for his back pain, including physical therapy and acupuncture treatment, home exercise programs, and medications such as cyclobenzaprine and tramadol as well as medical marijuana.[11]

With respect to his physical therapy and home exercises, on June 2, 2021, Plaintiff reported that he was "progressing slowly in physical therapy for back pain[,]" *id.* at 523,

[11] On August 15, 2024, Plaintiff reported that he had been treated with "multiple injections" into his spine, (Doc. 7-1 at 1012); however, there is no medical evidence indicating that Plaintiff has ever received a spinal injection.

and on August 11, 2021, Plaintiff reported that his treatments "have not provided him with lasting pain relief." *Id.* at 509. Two weeks later, on August 25, 2021, Plaintiff indicated that his "home exercise program has been going well." *Id.* at 839. On September 9, 2021, and September 29, 2021, Plaintiff's physical therapist at the Center for Pain and Spine, Birgit Ruppert, noted that Plaintiff's "range of motion is improving[,] and he is now ready to progress [to] the home exercise program." (Doc. 7-1 at 787-88.) On October 15, 2021, Plaintiff reported to Dr. Lefkoe that "[h]e feels that his response to [physical therapy] has been 'mixed[,]'" *id.* at 626, whereas Dr. Lefkoe noted that Plaintiff "has been tolerating [physical therapy] treatment well[] but perceives no improvement in his clinical status in response to that treatment." *Id.* at 627. Dr. Lefkoe prescribed more physical therapy and did not recommend more aggressive treatment. On November 30, 2021, PT Ruppert discharged Plaintiff from physical therapy and observed that his "symptoms and range of motion remain unchanged. He is independent with the home exercise program." *Id.* at 664. On March 28, 2022, Plaintiff reported that his back pain was alleviated by physical therapy, although some exercises were "aggravating his back[.]" *Id.* at 701.

Regarding medication interventions, on October 15, 2021, Plaintiff reported that cyclobenzaprine alleviated his back pain, and on January 19, 2022, Plaintiff indicated that he takes "[T]ylenol or [A]dvil most of the time to manage his pain[] but occasional use of cyclobenzaprine [is] still very helpful." *Id.* at 675. On August 28, 2023, Plaintiff reported to his primary care provider, Nurse Roy, that tramadol "is helpful for flare-ups[,]" and on February 26, 2024, Plaintiff told Nurse Roy that both cyclobenzaprine and tramadol "are effective" and requested refills of each. (Doc. 7-1 at 941, 1004) (emphasis omitted).

From this evidence, although it is at times conflicting, ALJ Martin reasonably concluded that Plaintiff's conservative treatments were at least partially effective in treating his back pain. Plaintiff's physicians did not express the need for Plaintiff to undergo more aggressive treatment for his back pain. Indeed, on November 29, 2022, Hulda Magnadottir, M.D., concluded that Plaintiff was not a candidate for surgery and that his spinal condition was unlikely to have caused his reported symptoms:

> I do not see any role for neurosurgical intervention here that would be helpful[,] nor do I see a structural reason for the pain going down into his legs or the numbness or tingling in his legs that he gets periodically. Hopefully he will benefit from the functional restoration program. If the numbness and tingling worsens, then certainly nerve conduction studies can be considered, but, again, I do not see any structural lesion that could be surgically treated or that explains his symptoms well.

*Id.* at 803.

Despite Nurse Roy discussing alternative treatment options with Plaintiff on February 26, 2024, including injections and resuming physical therapy, Plaintiff refused both possibilities due to fear that they would provide "a temporary fix" and had a "potential for doing more damage[.]" *Id.* at 981. Plaintiff was also repeatedly offered enrollment in the Functional Restoration Program at Dartmouth-Hitchcock Clinic, a rehabilitation program designed to treat chronic pain, but he refused participation because he was "[f]inding better luck with doing [his] own physical therapy practices[.]" *Id.*

**c. Plaintiff's Reported Daily Activities.**

ALJ Martin further found Plaintiff's testimony and self-reported symptoms to be inconsistent with his reported daily activities. In addition to those daily activities previously described, in his February 12, 2023 and September 13, 2023 function reports, on February 20, 2023, Plaintiff reported to Nurse Roy that he was going for forty-five-minute walks and "walks without restrictions[.]" *Id.* at 913. On June 7, 2024, Plaintiff reported to Nurse Roy that he was "doing yard work" and "clearing brush[.]" *Id.* at 1000. Although Plaintiff reported that he was using a walking stick as early as June 22, 2022, and using a cane as early as February 12, 2023, during his testimony at the September 24, 2024 hearing, Plaintiff conceded that his use of a walking stick and cane was never recommended by his physicians.[12]

ALJ Martin acknowledged that Plaintiff had, at times, reported more limited daily activities, but he found those allegations to be weak evidence of disability because they

[12] In his February 12, 2023 function form, Plaintiff claimed that his use of a cane and walking stick was recommended by a physical therapist, but there are no medical records to support this claim.

could not be objectively verified with any reasonable degree of certainty. Throughout the period of alleged disability, Plaintiff's self-reported capacity to perform daily activities ebbed and flowed. For example, Plaintiff consistently reported being able to walk between half a mile and a mile, but on January 17, 2023, he reported that he could only walk up to three hundred yards despite "walk[ing] without restrictions[.]" (Doc. 7-1 at 901.) On June 7, 2024, Nurse Roy recorded Plaintiff's self-report as follows:

> [Plaintiff c]ontinues to have good days and bad days, [with] no rhyme or reason for it. [His a]bility to perform activities i[s] uncertain until the time/day comes to do them. He still has days that his back pain is so severe that he is in bed for [one to two] days[ and] only up long enough to do necessities . . . . [Plaintiff] has had good days lately in which he can spend a couple of hours outside doing things and then come in to rest.

*Id.* at 1000. Against this backdrop, it was reasonable for ALJ Martin to accord less weight to Plaintiff's self-reports of more limited functioning, especially as the latter was inconsistent with the objective medical evidence and Plaintiff's daily activities.

For the reasons stated above, in analyzing Plaintiff's testimony, ALJ Martin properly considered Plaintiff self-reported symptoms and self-identified limitations. Substantial evidence supports ALJ Martin's finding that, to the extent Plaintiff claimed greater limitations than those set forth in the RFC, Plaintiff's testimony and self-reports were unreliable. *See Bertram v. Berryhill*, 2018 WL 1010287, at *17 (D. Vt. Feb. 21, 2018) ("Plaintiff's claims of disabling back pain are not wholly consistent with either his reported activities or [the doctor]'s consultative exam which revealed close to normal range of motion in [p]laintiff's spine and only mild pain while bending and extending."); *Devers v. Comm'r of Soc. Sec.*, 2023 WL 2734431, at *6 (S.D.N.Y. Mar. 31, 2023) (finding that the ALJ "carefully considered objective medical evidence, including diagnostic testing, objective clinical findings, [p]laintiff's treatment and medical history, and other evidence like [p]laintiff's daily activities, and decided that [p]laintiff's statement was inconsistent with her medical record[]"). Even if this court could reach a different conclusion, ALJ Martin's determination reflected no legal error. No remand is thus required on this basis.

**2. Whether the ALJ Erred in Finding the Opinions of Drs. Knisely and Abramson Persuasive.**

"When making a determination of disability, an ALJ must consider all of the available evidence in the individual's case record, including the opinions of medical sources." *Linda L.*, 2025 WL 262366, at *5 (internal quotation marks and citation omitted). In evaluating medical opinion evidence, the ALJ cannot "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)[.]" 20 C.F.R. § 404.1520c(a). Instead, an ALJ must evaluate the persuasiveness of each medical opinion based on supportability, consistency, the relationship with the claimant, specialization, and other relevant factors. *See id.* §§ 404.1520c(c)(1)-(5).

Supportability and consistency "are the most important factors" an ALJ considers when determining the persuasiveness of medical opinions. *Id.* § 404.1520c(b)(2). "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . , the more persuasive the medical opinions . . . will be." *Id.* § 404.1520c(c)(1). "The more consistent a medical opinion[] . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion[] . . . will be." *Id.* § 404.1520c(c)(2). "When the record contains competing medical opinions, it is the role of the Commissioner to resolve such conflicts." *Linda L.*, 2025 WL 262366, at *5 (alteration adopted) (internal quotation marks and citation omitted). "An ALJ must articulate *how* [he or she] considered medical opinions and prior administrative findings, as well as *how persuasive* [he or she] found them." *Id.* (emphasis in original).

In this case, ALJ Martin found the opinions of state agency consultants Dr. Knisely, Dr. Abramson, and Dr. Reilly were supported by detailed explanations and consistent with the evidence in the record and thus persuasive. Plaintiff argues that ALJ Martin's "reliance on the state agency consultants does not provide substantial evidence supporting the RFC[]" because "[t]hese consultants assessed only the list of basic exertional and non-exertional limitations that are contained in the DDE forms." (Doc. 11 at 8.) However, "an ALJ is entitled to rely upon the opinions of both examining and non-

examining [s]tate agency medical consultants, since such consultants are deemed to be qualified experts in the field of social security disability." *Christina K. v. Comm'r of Soc. Sec.*, 2022 WL 409576, at *4 (W.D.N.Y. Feb. 10, 2022) (collecting cases). As a result, "'the opinions of [s]tate agency medical consultants may constitute substantial evidence' as long as those opinions are themselves supported by substantial evidence." *Pappas v. Saul*, 414 F. Supp. 3d 657, 674 (S.D.N.Y. 2019) (alterations adopted) (quoting *Monroe v. Comm'r of Soc. Sec.*, 2016 WL 7971330, at *8 (N.D.N.Y. Dec. 29, 2016)).[13]

Plaintiff further contends that Dr. Knisely's and Dr. Abramson's opinions do not constitute substantial evidence because they "rendered their opinions without the benefit of later-developed evidence, including the diagnosis of Bertolotti syndrome[14] and continued documentation of severe episodic pain." (Doc. 11 at 8.) "[M]edical source opinions that are 'conclusory, stale, and based on an incomplete medical record' may not be substantial evidence to support an ALJ finding." *Camille v. Colvin*, 104 F. Supp. 3d 329, 343 (W.D.N.Y. 2015) (citation omitted), *aff'd*, 652 F. App'x 25 (2d Cir. 2016). "[A]lthough 'a medical opinion may be stale if it does not account for the claimant's deteriorating condition,' 'a more dated opinion may constitute substantial evidence if it is consistent with the record as a whole notwithstanding its age.'" *Wike v. Comm'r of Soc. Sec.*, 2025 WL 1135429, at *3 (E.D.N.Y. Apr. 17, 2025) (alteration adopted) (citations

---

[13] *See also Grega v. Saul*, 816 F. App'x 580, 582-83 (2d Cir. 2020) ("A consultative examiner's opinion may constitute substantial evidence if otherwise supported by the record."); *Holly C. v. Comm'r of Soc. Sec.*, 2024 WL 945222, at *4 (W.D.N.Y. Mar. 5, 2024) ("[T]he opinions of consultative examiners and [s]tate agency consultants can constitute substantial evidence.") (citing *Mongeur v. Heckler*, 722 F.2d 1033, 1039 (2d Cir. 1983)); *Sydnie Rae C. v. Comm'r of Soc. Sec.*, 2022 WL 1115354, at *9 (N.D.N.Y. Apr. 13, 2022) ("The opinions of consultative examiners may constitute substantial evidence where they are supported by the medical evidence in the record.") (alterations adopted) (internal quotation marks and citation omitted); *Golibersuch v. Comm'r of Soc. Sec.*, 2020 WL 409991, at *5 (W.D.N.Y. Jan. 24, 2020) ("[S]tate agency consultants are qualified as experts and their opinions 'can constitute substantial evidence' when consistent with the record as a whole.") (quoting *Diaz v. Colvin*, 2014 WL 2931583, at *5 n.3 (W.D.N.Y. June 27, 2014)).

[14] "Bertolotti syndrome is a congenital disorder leading to back pain associated due to a lumbosacral transitional vertebra (LSTV)." *La'Shontra R*, 2024 WL 7063498, at *2 n.3 (quoting Amanda E. Miller & Andrew Zhang, *Bertolotti Syndrome*, Nat'l Ctr. for Biotechnology Info. (July 25, 2023), https://www.ncbi.nlm.nih.gov/books/NBK585032).

omitted).

Even though Drs. Knisely and Abramson rendered their assessments before Plaintiff's Bertolotti syndrome diagnosis, on June 30, 2023 and October 10, 2023 respectively,[15] "new diagnos[es] do not, alone, render opinions stale." *Orlando A. v. Comm'r of Soc. Sec.*, 2023 WL 5344934, at *4 (W.D.N.Y. Aug. 21, 2023) (internal quotation marks and citation omitted); *see also Maria K. v. Comm'r of Soc. Sec.*, 2026 WL 532331, at *3 (W.D.N.Y. Feb. 26, 2026) ("[N]ew diagnoses do not, alone, render opinions stale[;] rather, plaintiff must also show that his [or her] physical condition deteriorated after the medical opinions were provided.") (alteration adopted) (internal quotation marks and citation omitted). "Where the submitted evidence d[oes] not directly contradict a doctor's opined limitations, and further, the ALJ analyze[s] the recent evidence, the doctor's opinion [is] not impermissibly stale." *Robin H. v. Comm'r of Soc. Sec.*, 2023 WL 3645489, at *13 (W.D.N.Y. May 25, 2023). "Plaintiff bears the burden of showing that [his or] her condition deteriorated after the medical opinions were provided." *Laurie A. F. v. Comm'r of Soc. Sec.*, 2026 WL 81696, at *9 (W.D.N.Y. Jan. 12, 2026) (citation omitted).

Between Drs. Knisely and Abramson rendering their opinions and ALJ Martin deciding Plaintiff's claim, Plaintiff's back pain, physical examination findings, reported daily activities, and treatment regimen remained relatively stable. *See Sandra W. v. Comm'r of Soc. Sec.*, 2022 WL 1115404, at *4 (N.D.N.Y. Apr. 14, 2022) ("Evidence that medical records showed an individual to be clinically stable does not support a finding of deterioration.") (citation omitted). In finding Dr. Knisely's and Dr. Abramson's opinions persuasive, ALJ Martin considered medical evidence obtained subsequent to their assessments, including Plaintiff's Bertolotti syndrome diagnosis, which was similar to his degenerative disc disease diagnosis in 2022, as both involve deterioration of the spinal column and resulting back pain. There is no evidence, however, that due to his Bertolotti syndrome diagnosis, Plaintiff's conservative treatment plan was altered in any manner or

[15] Plaintiff's treating provider, Nurse Roy, also rendered her opinions before Plaintiff's Bertolotti syndrome diagnosis, on April 30, 2024.

that Plaintiff suffered additional limitations. *See Deborah Elaine L. v. Comm'r of Soc. Sec.*, 2022 WL 2662974, at *4 (W.D.N.Y. July 11, 2022) ("The mere diagnosis of additional impairments, without evidence of accompanying additional limitations, does not render [the doctor]'s opinion stale.").

Dr. Knisely's and Dr. Abramson's assessments of Plaintiff were also consistent with the record as a whole. They found that Plaintiff could lift up to twenty pounds occasionally and ten pounds frequently; sit, stand, and walk for six hours in an eight-hour workday; stoop frequently; and crawl occasionally and that Plaintiff should avoid concentrated exposure to extreme cold and vibration. This is consistent with Plaintiff engaging in purely conservative treatment, which was at least partially effective in alleviating his back pain, Plaintiff refusing other treatment offerings, Plaintiff's numerous physical examinations resulting in largely normal findings, and Plaintiff's reported daily activities.

For the foregoing reasons, Plaintiff has not shown that his Bertolotti syndrome diagnosis rendered Dr. Knisely's and Dr. Abramson's opinions stale or that his condition deteriorated after they provided their opinions. ALJ Martin thus did not commit legal error when he found Dr. Knisely's and Dr. Abramson's opinions persuasive.

**3. Whether the ALJ Erred in Cherry-Picking Evidence.**

Plaintiff argues that "[t]he ALJ's analysis reflects impermissible cherry-picking of the evidence[]" because he "has pointed to what he characterizes as insignificant objective findings, episodes when [Plaintiff] is not experiencing debilitating pain, and the fact that [Plaintiff] is able to engage in some activities of daily living to discount [Plaintiff]'s credibility." (Doc. 11 at 8-9.) The Commissioner counters that "the ALJ acknowledged and reasonably considered evidence favorable to [Plaintiff]'s allegations of disabling impairments[] but supportably found that the record did not support the full extent of limitations [Plaintiff] alleged." (Doc. 15 at 6.)

Generally, "an ALJ is not required to discuss every piece of evidence submitted[,]" and "[a]n ALJ's failure to cite specific evidence does not indicate that such evidence was not considered." *Brault v. Comm'r of Soc. Sec.*, 683 F.3d 443, 448 (2d Cir.

2012) (internal quotation marks and citation omitted). "Although the ALJ is not required to reconcile every ambiguity and inconsistency of medical testimony, he [or she] cannot pick and choose evidence that supports a particular conclusion." *Crystal Z. v. Comm'r of Soc. Sec.*, 2020 WL 1969431, at *6 (D. Vt. Apr. 24, 2020) (internal quotation marks omitted) (quoting *Smith v. Bowen*, 687 F. Supp. 902, 904 (S.D.N.Y. 1988)). "Stated another way, 'in evaluating the domains of functioning, [ALJs] may not "cherry[-]pick" evidence by crediting evidence that supports administrative findings while ignoring conflicting evidence from the same source.'" *Lucsheena N. v. Comm'r of Soc. Sec.*, 2022 WL 4545693, at *3 (W.D.N.Y. Sept. 29, 2022) (citation omitted).

Regarding Plaintiff's physical impairments, ALJ Martin considered all of Plaintiff's diagnostic test results, including his MRI, EMG study, and CT scan. ALJ Martin cited examination findings, including a February 20, 2023 examination finding that Plaintiff had limited lateral flexion of the lumbar spine and pain with motion; an August 28, 2023 examination finding that he had normal gait, station, and reflexes, grossly intact sensation, and diffuse tenderness through the lumbar musculature; and a February 26, 2024 examination finding that he had antalgic gait. *See Johnston v. Comm'r of Soc. Sec.*, 2024 WL 3442664, at *15 (S.D.N.Y. July 17, 2024) ("Rather than cherry[-]pick evidence, the ALJ considered evidence both favoring and not favoring Plaintiff.") (citation omitted); *Rivera v. Kijakazi*, 2023 WL 6035665, at *7 (S.D.N.Y. Sept. 15, 2023) ("The ALJ did not cherry-pick favorable evidence while ignoring other evidence; to the contrary, she cited evidence both favoring and not favoring [plaintiff]."). He also considered Plaintiff's self-reports and the records of his treatment procedures.

Viewed collectively, ALJ Martin did not cherry-pick the evidence, but instead, he reviewed all of the evidence in the record and properly credited and relied on certain evidence to find that Plaintiff was not disabled. Even if this court might reach a different conclusion, it cannot reweigh the evidence. *See, e.g.*, *Jennifer A. v. Dudek*, 2025 WL 732370, at *11 (D. Vt. Mar. 7, 2025) ("The ALJ's determination must be upheld so long as substantial evidence supports it, as 'it is not the proper role of this court to reweigh the evidence.'") (alteration adopted) (citation omitted).

### 4. Whether the ALJ Erred in Failing to Include Off-Task and Absenteeism-Related Limitations.

Plaintiff argues that ALJ Martin erred by failing "to account for well-documented limitations in off-task behavior and absenteeism[]" in his RFC determination. (Doc. 11 at 5.) The Commissioner responds that these findings were not required because Nurse Roy and Ms. Boutin were the only sources to identify such limitations and ALJ Martin reasonably deemed their opinions unpersuasive.

Both Nurse Roy and Ms. Boutin opined that Plaintiff's impairments would cause him to be off-task for twenty percent or more of an average workday and that Plaintiff would have two or more unexcused absences from work per month. The DDE forms completed by state agency reviewers Drs. Schwartzreich, Knisely, Reilly, and Abramson did not reflect these limitations.[16] ALJ Martin found Dr. Knisely's, Dr. Reilly's, and Dr. Abramson's opinions persuasive and Nurse Roy's and Ms. Boutin's opinions unpersuasive and assessed an RFC that did not include restrictions for off-task time or absenteeism. As for Dr. Schwartzreich, the ALJ rejected his finding of no mental impairments. The ALJ thus imposed restrictions of "simple and detailed, but not complex tasks[]" as well as no "fast-paced production requirements[.]" (Doc. 7-1 at 28.)

An ALJ, "unlike a judge in a trial, must[,] on behalf of all claimants[,] affirmatively develop the record in light of the essentially non-adversarial nature of a benefits proceeding." *Lamay v. Comm'r of Soc. Sec.*, 562 F.3d 503, 508-09 (2d Cir. 2009) (alterations adopted) (internal quotation marks omitted); *see also Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000) (observing that an ALJ has an obligation to develop the record because "of the non-adversarial nature of . . . benefits proceedings"); *Echevarria v. Sec'y of Health & Hum. Servs.*, 685 F.2d 751, 755 (2d Cir. 1982) (noting that "the ALJ, unlike a judge in a trial, must . . . affirmatively develop the record[]"). Although the ALJ "has an affirmative duty to 'fill any clear gaps in the administrative record[,]'" *Selian*, 708 F.3d at 420 (quoting *Burgess*, 537 F.3d at 129), he "need not recite every piece of

[16] The DDE forms reflect the reviewers' opinions that Plaintiff can sit and stand for six out of eight hours per workday.

evidence that contributed to the decision, so long as the record 'permits [the court] to glean the rationale of an ALJ's decision[.]'" *Cichocki*, 729 F.3d at 178 n.3; *see also Brault*, 683 F.3d at 448 ("Although required to develop the record fully and fairly, an ALJ is not required to discuss every piece of evidence submitted.") (internal quotation marks and citation omitted).

"[W]here a medical source provides multiple medical opinions, the ALJ need not address every medical opinion from the same source; rather, the ALJ need only provide a 'single analysis.'" *Shawn M. v. Comm'r of Soc. Sec.*, 2024 WL 896926, at *7 (W.D.N.Y. Mar. 1, 2024) (quoting 20 C.F.R. § 416.920c(b)(2)). "An ALJ's failure to cite specific evidence does not indicate that such evidence was not considered." *Brault*, 683 F.3d at 448 (internal quotation marks omitted).

Although ALJ Martin did not specifically address off-task time and absenteeism, "[a]n ALJ is not required to include a non-exertional limitation in the RFC where it is 'not supported by the medical record.'" *Torres v. Comm'r of Soc. Sec.*, 559 F. Supp. 3d 175, 192 (S.D.N.Y. 2021) (citation omitted). ALJ Martin considered the opinions of Nurse Roy and Ms. Boutin, found them to be unpersuasive, and provided an adequate explanation supported by substantial evidence for that conclusion. *See Deanna K. v. Comm'r of Soc. Sec.*, 2023 WL 5443901, at *7 (W.D.N.Y. Aug. 24, 2023) (finding the ALJ did not err in failing to "explicitly refer to the portions of the opinions" regarding absenteeism because the ALJ did "consider both sources' findings" and found them unpersuasive as a whole).[17] When he rejected the opinions of Nurse Roy and Ms. Boutin,

---

[17] *See also Chevalier v. O'Malley*, 2024 WL 4264901, at *17 (S.D.N.Y. Aug. 8, 2024) (finding "the ALJ did not err by failing to address time off-task or absenteeism[]" because only one medical source opined as to these limitations and the ALJ reasonably found this source's "opinion unpersuasive because it was inconsistent with the record and unsupported by his own objective findings[]"), *report and recommendation adopted sub nom. Chevalier v. Comm'r of Soc. Sec.*, 2024 WL 4524621 (S.D.N.Y. Oct. 18, 2024); *Felton v. Comm'r of Soc. Sec.*, 2022 WL 21454153, at *19 (S.D.N.Y. Aug. 5, 2022) (finding the ALJ did not err in failing to "include findings as to time off[-]task or frequency of absences from work" because the ALJ found the medical opinions "unpersuasive" and "inconsistent with the [r]ecord as a whole[]") (internal quotation marks omitted), *report and recommendation adopted*, 2023 WL 6389117 (S.D.N.Y. Sept. 30, 2023).

he necessarily rejected their off-task and absenteeism limitations as well. Simply because ALJ Martin did not explicitly mention off-task time or absenteeism does not mean he did not consider these issues. *See Shawn M.*, 2024 WL 896926, at *9 ("[T]he fact that the ALJ did not specifically mention every work-related limitation stated in the [psychiatric review technique form] does not mean she did not consider them.") (citation omitted); *Marie R. v. Comm'r of Soc. Sec.*, 2022 WL 2180989, at *12 (N.D.N.Y. June 14, 2022) ("[T]he ALJ was not required to recite every limitation opined in order to show that every limitation was considered.") (internal quotation marks and citation omitted).

For the foregoing reasons, ALJ Martin did not err in declining to include off-task and absenteeism-related limitations in the RFC.

## CONCLUSION

For the reasons stated above, Plaintiff's motion to reverse the decision of the Commissioner is DENIED, (Doc. 11), and the Commissioner's motion to affirm is GRANTED. (Doc. 15.)

SO ORDERED.

Dated at Burlington, in the District of Vermont, this 14th day of September, 2026.

Christina Reiss, Chief Judge
United States District Court